

DAVID E. RICE
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

In re:                                          )
                                                )
CHRISTOPHER D. WILEY,                           )        Case No. 16-15361-DER
                                                )           (Chapter 13)
                            Debtor.             )
_____        )

## <u>MEMORANDUM OPINION</u>

The matter now before the court for decision is the Motion for Relief from Automatic Stay filed by Council of Unit Owners of Waterford Landing Condominium (the "Condominium"). The debtor, Christopher D. Wiley (the "Debtor"), filed a response and partial objection to the motion. The Condominium requests termination of the automatic stay to permit it to (i) foreclose its *in rem* lien rights against the Debtor's condominium unit, and (ii) pursue an *in personam* collection action against the Debtor for unpaid condominium assessments and other charges that accrued after commencement of this case.

The court conducted an evidentiary hearing on the motion, following which the court held this matter under advisement and requested each of the parties to submit a memorandum of law. Although he did not file an opposition to the motion or appear at the hearing, the Chapter 13 Trustee thereafter filed a limited objection to the Condominium's motion. In his post-trial memorandum, the Debtor (as he did at the hearing) asks the court (i) to appoint a

person to sell his condominium unit under the procedure adopted in *Pigg v. BAC Home Loans Servicing, LP (In re Pigg)*, 453 B.R. 728 (Bankr. M.D. Tenn. 2011), and (ii) if the stay is terminated with respect to *in personam* actions against him, to limit the action that may be taken by the Condominium in accordance with *Carrollan Gardens Condominium Association v. Khan (In re Khan)*, 504 B.R. 409 (Bankr. D. Md. 2014). The Chapter 13 Trustee opposes termination of the automatic stay to permit *in personam* action against the Debtor with respect to post-petition assessments—especially execution against property of the estate (including garnishment of the Debtor's post-petition wages). After due deliberation and consideration of the memoranda and the limited objection, the court is prepared to rule on this matter.

## Jurisdiction

The court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(G). This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rules 4001(a)(1), 7052, and 9014 of the Federal Rules of Bankruptcy Procedure).[1]

## Findings of Fact

The court makes the following findings of fact based upon the Joint Stipulation of Facts and Documents filed by the Condominium and the Debtor.

This case was commenced when the Debtor filed a voluntary petition in this court on April 20, 2016 (the "Petition Date") seeking relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). On the Petition Date, the Debtor owned real property

---

[1] To the extent any finding of fact may constitute a conclusion of law, it is adopted as such. To the extent any conclusion of law may constitute a finding of fact, it is adopted as such.

commonly known as Unit 304, 2 Banyan Wood Court, Essex, Baltimore County, Maryland 21221 (the "Property"), which is situated in the Waterford Landing Condominium. The Debtor is still the owner of the Property, but he has not lived at, used, or leased the Property since prior to the Petition Date, nor does he plan to do so in the future.

Under the terms of the applicable Declaration of Condominium and By-Laws, unit owners are obligated to make monthly payments to the Condominium to cover the common expenses of the Condominium. If such amounts are not timely paid, unit owners are obligated to pay the Condominium the amount of the past due assessments, plus late fees, interest, and attorney's fees. All such amounts constitute a lien on the owner's unit and may be collected by the Condominium by foreclosure of its lien against the unit or by the filing of a collection lawsuit against the owner individually. The Debtor has not made any payment toward assessments, late fees, or interest due the Condominium since May 1, 2016.

The Condominium is a secured creditor of the Debtor. As of July 24, 2017, the Debtor owed $3,087.16 to the Condominium for past due monthly assessments, late fees, and interest, plus accelerated assessments on his unit for the remainder of the fiscal year. In addition, the Condominium asserts that it is entitled to attorney's fees, the amount of which is not yet determined and as to which the parties reserve all rights.

The Property is subject to a purchase money deed of trust. To the best of the knowledge of the Debtor and the Condominium, since the Petition Date the holder of that secured claim has not instituted an action to foreclose its lien and sell the Property. Although the parties did not so stipulate, there appears to be no dispute based upon the record that (i) the holder of the promissory noted secured by the deed of trust on the Property is Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust ("WSFS"), (ii) WSFS filed a motion

seeking relief from automatic stay to permit foreclosure of its deed of trust against the Property, and (iii) after a hearing held on September 26, 2016, this court entered an order on October 24, 2016 that permitted WSFS to foreclose against the Property.[2]  In its motion, WSFS alleged that "absent this Court's Order allowing [WSFS] to proceed with the pending foreclosure, [WSFS's] security will be significantly jeopardized and/or destroyed."  Despite the alleged dire circumstances and the fact that this court granted its motion more than a year ago, the parties indicated at the hearing that WSFS has yet to conduct a foreclosure sale against the Property.

In addition, the court takes judicial notice of the following facts which are not in dispute and which can be ascertained based upon the record in this case.  On December 19, 2016, this court entered an order that confirmed the Debtor's second amended Chapter 13 plan (the "Chapter 13 Plan") filed on November 11, 2016.  The Chapter 13 Plan was served on WSFS by service on its attorney, Robyn A. McQuillen,[3] and on the Condominium by service on its attorney, John M. Oliveri.[4]  Neither WSFS nor the Condominium objected to confirmation of the

---

[2]  According to the loan documents attached to the proof of claim filed by WSFS, its deed of trust was recorded in the land records of Baltimore County, Maryland on September 17, 2007.  In the event of foreclosure of a first deed of trust against a condominium unit, Maryland law provides that a portion of a condominium lien not exceeding $1,200.00 is entitled (under certain circumstances) to priority over a first deed of trust recorded on or after October 1, 2011.  Md. Code Ann., Real Prop. § 11-110(f).  Thus, no portion of the Condominium's lien is entitled to priority of payment ahead of the WSFS secured claim.

[3]  WSFS filed a Proof of Claim on August 31, 2016 that was signed on its behalf by Ms. McQuillen and that directed notices and payments to WSFS to be directed to Carrington Mortgage Services, LLC, 1600 South Douglass Road, Suite 200-A, Anaheim, California 92806.  At the time she filed the motion for relief from automatic stay on its behalf, Ms. McQuillen also filed a notice of representation of WSFS—each of which constituted entry of her appearance in this case on behalf of WSFS.  The Chapter 13 Plan was served by CM/ECF electronic mail on Ms. McQuillen, which constituted service on WSFS pursuant to Rule 7004(h)(1) of the Federal Rules of Bankruptcy Procedure.  A copy of the Chapter 13 Plan was also mailed to Ms. McQuillen at her office address.

[4]  The Condominium filed a Proof of Claim on May 2, 2016 that was signed on its behalf by Mr. Oliveri and that directed notices and payments to the Condominium to be directed to Mr. Oliveri's law firm, Oliveri & Associates, LLC, 635 N. Bestgate Road, Suite 200, Annapolis, Maryland 21401.  The Condominium later amended its claim on September 29, 2017, which amendment was also signed by Mr. Oliveri and directed notices to the Condominium to him.  Although the Condominium did not file an objection to the Debtor's Chapter 13 Plan, Mr. Oliveri filed an objection on September 22, 2016 on behalf of the Condominium to an earlier version of the Debtor's plan filed on August 26, 2016.  The earlier plan provided for title to the Property to be *vested* in the Condominium upon confirmation pursuant to § 1332(b)(9) of the Bankruptcy Code, and for the Debtor to make a special warranty deed to the Condominium and record it at his expense in the land records—a provision that does not appear in the confirmed plan (which merely provides for *surrender* of the Property pursuant to § 1325(a)(5)(C) of the Bankruptcy

Chapter 13 Plan.  With respect to the Property and the secured claims of WSFS and the Condominium, the confirmed Chapter 13 Plan provides in pertinent part as follows:

> The following secured claims will be satisfied through surrender of the collateral securing the claims (describe the collateral); any allowed claims for deficiencies will be paid pro rata with general unsecured creditors; upon confirmation of the plan, the automatic stay is lifted, if not modified earlier, as to the collateral of the listed creditors:
>
> **The debtor will surrender [the Property] to [<u>WSFS</u>] and to [<u>the Condominium], as their interests may appear</u>.  Surrender in this paragraph means the debtor will not oppose a foreclosure. _PLEASE NOTE:  THIS PARAGRAPH IS A "NON-STANDARD" PLAN PROVISION._**

Second Amended Chapter 13 Plan, ¶ 2(e)(iv) [Docket No. 58, Page 3 of 4] (emphasis in original).  Neither WSFS nor the Condominium appealed the order confirming the Debtor's Chapter 13 Plan, which is now, and long has been, a final order.[5]  That order provides (consistent with the terms of the Chapter 13 Plan)[6] that "the property of the estate shall not vest in the Debtor until the Debtor is granted a discharge or this case is dismissed."  Order Confirming Plan [Docket No. 68, page 1 of 2].

Finally, at the evidentiary hearing the Debtor asked this court to take judicial notice of whatever was said at a prior hearing in this court on confirmation of one of the Debtor's proposed Chapter 13 plans by counsel for WSFS with respect to its intent to proceed with foreclosure against the Property.  The court deferred ruling on that request.  After reviewing the court's electronic recordings of various proceedings in this case, it appears that the Debtor was

---

Code).  Confirmation of that earlier plan was denied with leave to amend on October 26, 2016.  Thereafter, the Debtor timely filed an amended plan—that is, the Chapter 13 Plan that was ultimately confirmed by this court.  The Chapter 13 Plan was served by CM/ECF electronic mail on Mr. Oliveri, which constituted service on the Condominium pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure.  A copy of the Chapter 13 Plan was also mailed to Timothy J. Larsen, an attorney at Mr. Oliveri's law firm, at his office address.

[5]  The order confirming the Chapter 13 Plan was served by CM/ECF electronic mail on both Ms. McQuillen and Mr. Oliveri.  In addition, a copy of the order was mailed to both attorneys.

[6]  The Chapter 13 Plan contains the then standard language of this District's form Chapter 13 plan (Local Bankruptcy Form M) which provided, "Title to the Debtor's property shall revest in the Debtor when the Debtor is granted a discharge pursuant to 11 U.S.C. § 1328, or upon dismissal of the case, or upon closing of the case."

referring this court to the confirmation hearing held on September 27, 2016 (the day after the hearing at which this court granted the WSFS request for relief from the automatic stay to foreclose against the Property).[7]  Counsel for the Debtor believed Ms. McQuillen's statements at that hearing indicated that WSFS would proceed with foreclosure.  Ms. McQuillen's comments on the record, however, indicated only that it was speculative as to whether WSFS would be going forward with foreclosure and that she had no definitive answer on whether WSFS would foreclose.  The Debtor's request that the court take judicial notice is granted, but solely as to what Ms. McQuillen said on the record at that hearing.

## Conclusions of Law

### I.    *Enforcement of Lien Rights*.

The Condominium's request for relief from stay with respect to enforcement of *in rem* lien rights against the Property is moot.  The Debtor has repeatedly made clear that he does not oppose *in rem* action by the Condominium against the Property.  More importantly, however, no order of this court is needed at this point for the Condominium to take such action.  Under § 1327(a) of the Bankruptcy Code, the terms of the Debtor's confirmed Chapter 13 Plan are binding on the Debtor and the Condominium, and confirmation of the plan is a final judgment that has *res judicata* effect.  *United Student Aid Funds v. Espinoza*, 130 S. Ct. 1367, 1376 (2010); *Covert v. LVNV Funding*, 779 F.3d 242, 246 (4th Cir. 2015); *In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993).  Upon entry of the order of confirmation on December 19, 2016, Paragraph 2(e)(iv) of the Chapter 13 Plan became effective and without need for any further order of this court (i) lifted the automatic stay under § 362(a) of the Bankruptcy Code, and (ii) permitted the Condominium to enforce its *in rem* rights against the Property.  Thus far, the

---

[7] After listening to the recording of the September 26, 2016 hearing it is apparent that Ms. McQuillen made no statements at that hearing about the intentions of WSFS concerning when it might actually proceed with a foreclosure against the Property.

Condominium has chosen not to take such action.[8] There is simply no reason why any further order of this court is necessary should the Condominium decide to enforce its *in rem* rights.

## II.    *Collection Against the Debtor Individually*.

The Condominium argues that the outcome on the question of enforcement of its *in personam* rights against the Debtor with respect to post-petition assessments is controlled by the Fourth Circuit's decision in *River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir. 1994). I do not agree. *Rosenfeld* was decided in a Chapter 7 case. Later, Congress amended the Bankruptcy Code to add and then further revise § 523(a)(16).[9]

This court has previously held that a Chapter 13 debtor's obligation to pay post-petition condominium assessments continues up to the time of entry of a discharge under § 1328(a) of the Bankruptcy Code, at which time the condominium's *in rem* remedies survive, but the *in*

---

[8] At the hearing, counsel for the Condominium indicated that the Condominium was not inclined to enforce its *in rem* rights against the Property because it believed that a foreclosure sale was not likely to produce proceeds sufficient to satisfy the senior lien position held by WSFS.

[9] Section 523(a)(16) was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994 (effective as of October 22, 1994), and subsequently amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (effective as of October 17, 2005). Initially, the § 523(a)(16) exception applied only to post-petition fees or assessments for condominium and cooperative units that were occupied or leased to a tenant by the debtor. The 2005 amendment expanded the exception to include homeowners associations, and eliminated the occupied or leased unit limitation. The currently applicable language of § 523(a)(16) provides as follows:

> A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt … for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.

11 U.S.C. § 523(a)(16). Given its plain meaning, this language indicates Congress believed that but for the exception specified, post-petition condominium assessments (like prepetition condominium assessments) are pre-petition debts on which the *in personam* liability of a debtor is extinguished by a Chapter 7 discharge. If such debts were post-petition claims not subject to discharge as the Fourth Circuit concluded in *Rosenfeld*, there would be no need for the exception adopted by Congress. For the reasons explained below, a discharge granted under § 1328(a) of the Bankruptcy Code to a debtor who completes payments under a confirmed Chapter 13 plan extinguishes such *in personam* liability because while Congress specified a number of § 523(a) exceptions to discharge that are still expressly applicable and also exceptions to a § 1328(a) discharge, § 523(a)(16) is simply not one of them.

*personam* obligations of the debtor are discharged.  *Khan*, 504 B.R. at 412 ("Because 11 U.S.C. § 523(a)(16) is not specifically listed among the exceptions to a Chapter 13 discharge entered after completion of all of a debtor's payments under a Chapter 13 plan, the *in personam* obligation to pay condominium fees does not survive as an exception to discharge.  But, this obligation survives discharge as an *in rem* obligation because it is a covenant running with the land.").  As Judge Mannes explained in *Khan*,

> A ruling that with the entry of a discharge under 11 U.S.C. § 1328(a)(2) the obligation continues as an *in rem* remedy but is discharged as a personal liability is based upon the plain meaning of 11 U.S.C. § 1328(a) that does not include 11 U.S.C. § 523(a)(16) among the exceptions to the discharge entered after plan completion.  The *Rosenfeld* ruling was implemented by the enactment of 11 U.S.C. § 523(a)(16) by the 2005 Bankruptcy Code revisions as to cases like it under Chapter 7.  However, in cases under Chapter 13 after discharge of pre-petition claims the condominium contract obligation rides through leaving a debtor without personal liability as with consensual liens under long-established law.

*Id*.  This reasoning seems sound.  Thus, this court also agrees with the following summary by Judge Mannes of the effect of his ruling in *Khan*:

> Although the stay will be lifted, the court will comment on the state of affairs should [the] Debtor be able to consummate his plan.  The pre-filing claim of the condominium would be discharged.  Its lien remains of record, not having been avoided.  After discharge, 11 U.S.C. § 523(a)(16) will not impose personal liability upon [the] Debtor to continue the payment of condominium assessments, but the charges of the condominium will continue as an *in rem* obligation.

*Id*. at 414.

The parties have not directed the court to, nor has the court's own research revealed, any decision rendered after Congress adopted (or later amended) § 523(a)(16) in which the Supreme Court or the Fourth Circuit addresses either (i) the effect of a § 1328(a) discharge on a debtor's

*in personam* liability for post-petition condominium fees, or (ii) the extent to which a condominium should be permitted to enforce a debtor's liability for such fees while Chapter 13 plan payments are ongoing. Related questions have been considered by the lower courts within the Fourth Circuit. *See, e.g. In re Guillebreaux*, 361 B.R. 87 (Bankr. M.D.N.C. 2007) (homeowners association entitled to administrative expense claim for post-petition assessments when property sold by a Chapter 7 trustee); *Montclair Prop. Owners Ass'n v. Reynard* (*In re Reynard)*, 250 B.R. 241 (Bankr. E.D. Va. 2000) (applying *Rosenfeld* in a Chapter 13 case to conclude that homeowners association does not need relief from stay to demand payment or file suit to collect post-petition assessments and denying relief from stay to execute on property of the estate as premature); *Old Bridge Estates Community Ass'n v. Lozada (In re Lozada)*, 214 B.R. 558 (Bankr. E.D. Va. 1997) (in a Chapter 7 case filed after the initial version of § 523(a)(16) was adopted, homeowners association claim for post-petition assessments not discharged by reason of *Rosenfeld*), *aff'd* 176 F.3d 475 (4th Cir. 1999) (unpublished *per curiam* opinion stating that while "*Rosenfeld* was superseded as it applied to condominium and cooperative housing association fees, § 523(a)(16) did not affect *Rosenfeld's* treatment of other homeowner's association fees"); *In re Schechter*, 2012 W.L. 3555414 (Bankr. E.D. Va. Aug. 16, 2012) (applying *Reynard* in a Chapter 13 case with respect to post-petition condominium assessments). While such decisions may be persuasive authority to be considered by this court, I conclude after considering them that *Khan* represents the better reasoned and more persuasive authority with respect to the issues before this court.

The court is also aware of reported decisions subsequent to *Khan* by the lower courts within the Fourth Circuit such as *In re Rose*, 512 B.R. 790 (Bankr. W.D.N.C. 2014). While the *Rose* opinion cites *Khan* with approval, it does so for the limited proposition that a Chapter 13

debtor cannot force a secured creditor to accept property surrendered by the debtor in a Chapter 13 plan pursuant to § 1325(a)(5)(C) of the Bankruptcy Code.[10]   512 B.R. at 794. *See, Khan*, 504 B.R. at 410 ("none of the secured creditors has gone forward with foreclosure, and [the] Debtor cannot compel them to accept his surrender pursuant to 11 U.S.C. § 1325(a)(5)(C)").  Nothing in *Rose*, however, addresses the question of enforcement of post-petition condominium fees as an *in personam* obligation of a Chapter 13 debtor.[11]

One of the opinions this court asked the parties to address in their memoranda was *In re Ramirez*, 547 B.R. 449 (Bankr. S.D. Fla. 2016).  In that opinion, the court followed *Khan* and held that "the *in personam* obligation with respect to condominium fees does not survive as an exception to discharge.  Instead, the obligation survives as an *in rem* obligation because it runs with the land."  *Id*. at 452 (citations omitted).  In *Ramirez*, the court denied a request for sanctions against a condominium that sued the debtors after completion of their plan payments, but only because it concluded that at the time the condominium acted the law in its circuit was "unsettled."  *Id*. at 454.

The Condominium suggests that this court should disregard *Ramirez* because it "was not followed by subsequent decisions from its sister courts."  To support that contention, the Condominium cites *In re Montalvo*, 546 B.R. 880 (Bankr. M.D. Fla. 2016), which it characterizes as disagreeing with *Ramirez* and acknowledging that there are three views on treatment of post-petition condominium assessments.  The *Montalvo* court did rely on the Fourth

---

[10]  The Debtor has argued that the surrender provision of his Chapter 13 Plan is somehow dispositive of the issues now before this court.  As the *Rose* court explained at length, however, surrender of collateral pursuant to § 1325(a)(5)(C) does not transfer ownership to a lender and does not require the lender to enforce its *in rem* lien rights against the collateral.  512 B.R. at 793-94.  Vesting of title pursuant to § 1322(b)(9) may be a different matter, but that is not an issue before this court inasmuch as the Chapter 13 Plan does not contain a vesting provision.  Accordingly, this court expresses no opinion here on the enforceability of such provisions or on the analysis of that issue by the *Rose* court.

[11]  The Condominium relies on the unreported decision by Judge Messitte of the United States District Court for the District of Maryland in *Heffner v. Elmore, Throop & Young, P.C.*, 2012 W.L. 2138097 (D. Md. June 12, 2012).  The court respectfully disagrees with *Heffner* for the reasons stated in *Khan*, 504 B.R. at 414, n.7.

Circuit's decision in *Rosenfeld* and (unlike *Ramirez*) held that a Chapter 13 debtor's *in personam* liability for post-petition condominium assessments is not discharged under § 1328(a). *Montalvo*, however, was not decided subsequent to *Ramirez*, did not refer to *Ramirez*, and relied entirely on reported decisions issued before *Ramirez* was decided.[12]  More importantly perhaps, when the *Montalvo* court refers to *Khan* it does so only for the proposition that *in rem* rights are preserved because they run with the land and does not recognize that *Khan* represents a fourth line of authority distinct from the three lines it identifies earlier in its opinion.  In any event, I believe that *Khan* and *Ramirez* are the better reasoned line of authority, and that this court should not disregard *Khan* given that it is a well-reasoned prior reported opinion of another bankruptcy judge in this district.[13]

In sum, the position advocated by the Condominium asks this court to rewrite the Bankruptcy Code to insert the § 523(a)(16) discharge exception into § 1328(a).  Congress makes the bankruptcy laws and chose not to do so.  Accordingly, this court must decline the invitation to do so as well.

### III.   *Sale of the Property*.

In his memorandum (as he did at the evidentiary hearing), the Debtor asks the court to exercise its powers under § 105(a) of the Bankruptcy Code to appoint a person to sell the Property and urges the court to adopt the views expressed in the *Pigg* opinion.  The Debtor

---

[12] The *Ramirez* opinion was issued on March 7, 2016, ten days after the *Montalvo* opinion was issued on February 25, 2016.  Neither opinion makes any reference to the other.

[13] This court also asked the parties to address in their briefing the opinion in *In re Coonfield*, 517 B.R. 239 (Bankr. E.D. Wash. 2014).  In deciding a condominium's objection to confirmation of a unit owner's Chapter 13 plan, the *Coonfield* court overruled the condominium's argument that a Chapter 13 plan must provide for payment of ongoing assessments against a unit that was abandoned by the owner prior to bankruptcy; it did so because it held (like *Khan*) that the effect of the adoption by Congress of § 523(a)(16) was to make a debtor's obligation to pay post-petition condominium assessment subject to the broad discharge granted under § 1328(a).  *Id*. at 244-45 ("If Congress intended to categorically except debts for ongoing association assessments from discharge it would have said so.").  *Coonfield* was subsequently criticized in *In re Batali*, 2015 W.L. 7758330 (B.A.P. 9th Cir. Dec. 1, 2015), as contrary to *In re Foster*, 435 B.R. 650 (B.A.P. 9th Cir. 2010), both of which relied upon the Fourth Circuit's decision in *Rosenfeld*.  Nevertheless, I believe that *Khan*, *Ramirez*, and *Coonfield* express the better reasoned conclusion with respect to the effect on *Rosenfeld* of the adoption by Congress of § 523(a)(16).

wishes for the Property to be sold in order to limit continued accrual of more post-petition assessments that the Condominium will assert are his *in personam* liability. While this may be an understandable objective, the reasoning of the *Pigg* court does not support appointment of a person to sell the Property in this case.

In *Pigg*, the debtor (like the Debtor in this case) was the owner of a condominium unit that was worth less than its market value and the holder of the debt secured by the unit had not foreclosed its lien despite being granted relief from the automatic stay to do so. The *Pigg* case, however, was one filed under Chapter 7 of the Bankruptcy Code. Exercising its equitable powers in that case, the court (among other things) set aside temporarily the debtor's discharge, set aside the Chapter 7 trustee's report of no distribution, set aside its order granting relief from stay, directed the Chapter 7 trustee to be reappointed, and ordered the Chapter 7 trustee to sell the condominium unit pursuant to § 363 of the Bankruptcy Code. *Pigg*, 453 B.R. at 735.

Unlike *Pigg*, this case is one under Chapter 13 of the Bankruptcy Code. No "person" need be appointed in a Chapter 13 case to sell the Property pursuant to § 363(b) and § 363(f) because the Debtor himself is authorized to take such action. In a Chapter 13 case, the Bankruptcy Code provides that "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l)." 11 U.S.C. § 1303. Thus, the Debtor's request for appointment of a person to sell the Property must be denied.

In reaching this conclusion, the court does not mean to suggest that other aspects of *Pigg* might not be persuasive if the Debtor were to elect to sell the Property himself pursuant to § 363(b) and § 363(f). For example, the *Pigg* court held that the lender and the homeowners association had "consented to sale by their inaction," and that "[w]hile in most cases there would be no such inference, in this case, equity demands that the court fashion a remedy that balances

the rights of the lienholders and the right of a debtor to a fresh start." *Id*. at 736. Although the instant case may present different facts and equitable considerations, it is a case in which a first priority secured creditor has apparently deferred action to foreclose against the Property despite having been granted relief from stay to do so more than 15 months ago—delay that has exposed the Debtor to the Condominium's claims of continuing liability for post-petition assessments and has undoubtedly necessitated the time and expense of defending the Condominium's motion. Under such circumstances, a court might well conclude that a secured creditor has consented to a short sale of the Property pursuant to § 363(f)(2).

IV.    *Section 1328(a) Discharge.*

The Debtor's confirmed plan provides for payments to creditors extending over 60 months and his case has been pending since April 20, 2016. Accordingly, the Debtor has roughly 40 months remaining in the plan before he is eligible for a discharge under § 1328(a), and thus eligible to discharge his *in personam* liability on the post-petition condominium assessments. As discussed above, should the Debtor fail to obtain a discharge under § 1328(a), but rather obtain a hardship discharge under § 1328(b), the § 523(a)(16) exception would apply and his liability for post-petition condominium assessments would not be discharged. Accordingly, this opinion is without prejudice to the rights of the Debtor or the Condominium in the event the Debtor fails to obtain a discharge under § 1328(a).

V.    *Remedies*

The court turns now to the remaining question—that is, what remedies (if any) should be available to the Condominium with respect to collection of post-petition assessments by *in personam* action against the Debtor given that such claims have not been, and may never be, discharged under § 1328(a)?

In a Chapter 13 case, the bankruptcy estate is comprised of not only the property specified in § 541, but also all such property acquired by the debtor after commencement of the case and all earnings from services performed by the debtor after commencement of the case. 11 U.S.C. § 1306.  Although the Debtor's Chapter 13 Plan has been confirmed in this case, the property of the estate did not vest in the Debtor pursuant to § 1327(b) because the order confirming the plan provides that such property does not vest in the Debtor until he is granted a discharge or his case is dismissed.  Thus, any action by the Condominium to enforce its post-petition assessments claim against the Debtor *in personam* is currently stayed under § 362(a)(3) and § 362(a)(4) to the extent the Condominium seeks to obtain possession of, or to create, perfect, or enforce a lien against, property of the estate.

The Condominium has not suggested that it has identified any property of the Debtor against which it seeks to enforce its claim.  Likewise, the Condominium has not identified the property of the estate that would be the target of its collection efforts if this court were to grant its request for relief from the automatic stay.  The Condominium is bound by the Chapter 13 Plan under § 1327(a).  A bankruptcy court should be cautious in such circumstances about permitting *in personam* collection actions against the Debtor's post-petition wages or property of his estate.  Otherwise, action by a creditor bound by a confirmed Chapter 13 plan might adversely impact the success of that plan.  On the other hand, it is not certain that the Debtor will ultimately receive a discharge under § 1328(a), and it may be unfair to the Condominium to delay indefinitely reduction of its post-petition assessment claim to judgment.

These very same considerations were grappled with by the courts in *Reynard* and *Schechter*—courts that held post-petition condominium or homeowners fees were not dischargeable in a Chapter 13 case by reason of *Rosenfeld*.  In both of those cases, the court

concluded that it was premature to lift the stay to permit enforcement against property of the estate until the creditor had reduced its claim to judgment, and the amount of the judgment and its potential effect on the success of the Chapter 13 plan could be determined. *Reynard*, 250 B.R. at 250; *Schechter*, 2012 W.L. 3555414, at *8. The opinion in *Khan* does not make clear the extent to which the court believed *in personam* collection action should be permitted. The order entered in accordance with the *Khan* opinion, however, stated that the condominium "may proceed against the Debtor for post-petition debts and foreclose its lien against the real property." *In re Khan*, Case No. 11-33248-PM, United States Bankruptcy Court for the District of Maryland [Docket No. 67]. The language of that order indicates that the relief granted did not include enforcement of any judgment against property of the debtor's estate; indeed, nothing in the *Khan* opinion suggests that such relief was to be granted. Moreover, Judge Mannes cites *Schechter* as holding that "[c]ollection activities must be limited to property of the debtors, not property of the estate, but all post-confirmation earnings are property of the estate under 11 U.S.C. § 1306(a)(2)." *Khan*, 504 B.R. at 414.

The circumstances of this case are similar to those in *Khan*. Accordingly, I conclude that there is cause to grant relief under § 362(d) to terminate to the automatic stay to the limited extent necessary to permit the Condominium to reduce its post-petition claims against the Debtor to judgment and enforce them against the Debtor, but that it is premature to permit enforcement of any such judgment against property of the Debtor's bankruptcy estate.

## Conclusion

The court will enter a separate order consistent with this memorandum opinion that (i) grants in part and denies in part the Motion for Relief from Automatic Stay filed by the Condominium, and (ii) denies the Debtor's request for appointment of a person to sell the

Property without prejudice to the right of the Debtor to propose a sale of the Property himself

pursuant to § 363(b) and § 363(f) of the Bankruptcy Code.


cc:     Michael I. Gilbert, Esq.
        7506 Eastern Avenue
        Baltimore, Maryland 21224
        *Attorney for Debtor, Christopher D. Wiley*

        John M. Oliveri, Esq.
        Timothy J. Larsen, Esq.
        Oliveri & Associates, LLC
        635 N. Bestgate Road, Suite 200
        Annapolis, Maryland 21401
        *Attorney for Movant, Council of Unit Owners of Waterford Landing Condominium*

        Robert S. Thomas, II
        300 E. Joppa Road, Suite 409
        Towson, Maryland 21286
        *Chapter 13 Trustee*

**-- END OF MEMORANDUM OPINION --**